IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS ADAMS and CONRAD EVERETT, on behalf of themselves and those similarly situated, | : : : CIVIL ACTION : |
| Plaintiffs, | : FILED ELECTRONICALLY |
| v. | : ON MARCH 14, 2024 |
| RHOMBUS SERVICES, LLC (d/b/a Brandpoint Services), | : : COLLECTIVE ACTION : |
| Defendant. | : JURY TRIAL DEMANDED : : |

## COLLECTIVE ACTION COMPLAINT

Marcus Adams ("Adams") and Conrad Everett ("Everett") (together, "Plaintiffs") bring this action against Rhombus Services, LLC (which does business under the trade name Brandpoint Services and is referred to herein as "Defendant") alleging that Defendant has failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiffs assert the FLSA claim as a collective action under 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendant because, *inter alia*, it is registered to do business in Pennsylvania, it is headquartered in Pennsylvania, and it regularly conducts business in Pennsylvania.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because, *inter alia*, Defendant is headquartered in this judicial district and, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in this district.

1

**PARTIES**

4. Marcus Adams is an individual residing in Mount Vernon, GA.

5. Conrad Everett is an individual residing in Evanston, IL.

6. Defendant is a limited liability company registered to do business in Pennsylvania and headquartered in Trooper, PA (Montgomery County).

7. Defendant employs individuals, including Plaintiffs, engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce.

8. Defendant (which has annual gross volume of sales made or business done exceeding $500,000) is an "enterprise" engaged in commerce or in the production of goods for commerce because it employs individuals who handle, sell, and/or otherwise work on goods that have been moved in or produced for commerce.

**FACTS**

9. Defendant, according to its website, is a "National Merchandising Company" that hires "Traveling Merchandisers," who "are willing to travel to various retail locations and work in a fast-paced environment."[1]

10. Defendant contracts with Dollar General to perform "Lifecycle Remodels" (hereafter "remodels") at its retail stores.

11. Traveling Merchandisers perform manual labor associated with the remodels. Traveling Merchandisers' work is performed at the Dollar General stores and generally includes, *inter alia*: (i) removing merchandise from shelves, (ii) moving shelving units to assigned locations according to Defendant and Dollar General's instructions, (iii) building shelving units

---

[1] https://brandpointservices.com/vendor-network/traveling-merchandiser/ (last reviewed 2/23/24).

2

in designated locations, and (iv) re-stocking the shelves with product. While such work is physically demanding, it requires no special skills beyond those quickly and easily learned at the job site.

12. In performing remodels, Traveling Merchandisers must follow the instructions given by Defendant's supervisor.

13. During a typical remodel, Defendant's representative supervises and directs the day-to-day work of approximately 12 Traveling Merchandisers. Defendant's supervisors have the right to control (and actually control) the manner in which Traveling Merchandisers perform their work.

14. Defendant provides Traveling Merchandisers with the tools required for all remodel work.

15. The work performed by Traveling Merchandisers is an integral part of the businesses of Defendant (which purports to be a "National Merchandising Company").

16. Traveling Merchandisers have no meaningful opportunity for profit or loss based on their managerial skill. On the contrary, the position requires no managerial skill.

17. Defendant requires Traveling Merchandisers to sign an "Independent Contractor Agreement" that classifies them as non-employee contractors. Regardless, a worker's employment status under the FLSA depends on the outcome of a six-factor "economic reality" test rather than the terms of a written contract. *See*, *e.g.*, *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 142-43 (3d Cir. 2020); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229-30 (3d Cir. 2019). "Notably, none of these factors asks whether the worker signed an agreement stating that she is an 'independent contractor,' as [Defendant] asked of the [Traveling Merchandisers] here. That is not surprising [since] the whole point of the FLSA […] is to protect workers by

overriding contractual relations through statute." *Id.* at 229.

18. Here, based on facts that are summarized above and will be further explored during discovery, the trier of fact can reasonably conclude that the following six "economic reality" factors weigh in favor of a finding that Plaintiffs and other Traveling Merchandisers are Defendant's employees: "'(1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon [her] managerial skill; (3) the alleged employee's investment in equipment or materials required for [her] task, or [her] employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; [and] (6) whether the service rendered is an integral part of the alleged employer's business.'" *Verma*, 937 F.3d at 229 (quoting *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

19. Traveling Merchandisers generally are expected to work over 40 hours during two of every three weeks.

20. Traveling Merchandisers receive a guaranteed and fixed weekly payment (*e.g.*, $1,025) for all hours worked during a week in which they perform remodel work. Since sometime in 2023, this guaranteed/fixed weekly payment ostensibly has consisted of hourly pay for hours worked up to 40 *plus* "time and one-half" overtime pay for hours worked over 40 *plus* a "bonus" payment in the amount necessary to bring the worker's total weekly earnings up to the guaranteed/fixed weekly payment.[2] Such compensation schemes do not satisfy an employer's obligation to pay overtime wages for hours worked over 40 per week. *See* 29 C.F.R. § 778.502 (entitled "Artificially labeling part of the regular wages a 'bonus'").

---

[2] Defendant presumably implemented this payment scheme in response to a 2022 collective action brought by Traveling Merchandisers who performed Dollar General remodels, were paid fixed weekly salaries, and sought unpaid overtime wages. *See Thompson v. Rhombus Services, LLC*, 2:22-cv-1244-JMY (ED. Pa.). In June 2023, this Court approved the settlement of the

4

21. From 2021 until approximately May 2023, Adams worked for Defendant as a Traveling Merchandiser pursuant to the general terms and conditions of employment summarized above.

22. Adams regularly worked over 60 hours per week and, like other Traveling Merchandisers, received no overtime wages for hours worked over 40.

23. From 2019 or 2020 until approximately August of 2022, Everett worked for Defendant as a Traveling Merchandiser pursuant to the general terms and conditions of employment summarized above.

24. Everett regularly worked over 60 hours per week and, like other Traveling Merchandisers, received no overtime wages for hours worked over 40.

25. In failing to pay overtime wages to Plaintiffs and other Traveling Merchandisers, Defendant violated and acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## COLLECTIVE ALLEGATIONS

26. Defendant's failure to pay overtime wages to Plaintiffs and other Traveling Merchandisers reflects business policies and practices that do not depend on the personal circumstances of individual employees. As such, Plaintiffs are similarly situated to the other Traveling Merchandisers who, like Plaintiffs, were classified as non-employee contractors and denied overtime wages.

27. Plaintiffs' FLSA claim should proceed as a collective action because they and other Traveling Merchandisers, having worked pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law. The putative collective is defined as: **All Traveling Merchandisers and other**

---

*Thompson* litigation. *See* 2023 U.S. Dist. LEXIS 109263 (E.D. Pa. June 14, 2023).

**individuals (regardless of job title) who, during any week within the past three years, were paid by Rhombus Services, LLC (a.k.a. Brandpoint Services) to perform remodels at Dollar General retail stores.**

## COUNT I

28.     The FLSA requires that employees receive overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1).

29.     Plaintiffs and other collective members are employees entitled to the FLSA's protections, and Defendant is an employer required to comply with the FLSA.

30.     In failing to pay overtime wages to Plaintiffs and other collective members for hours worked over 40 per week, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions. As such, Defendant is liable for violating the FLSA rights of Plaintiffs and other collective members.

## JURY DEMAND

31.     Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other collective members, demand:

  a.   Issuance of notice to all members of the FLSA collective;

  b.   Judgment against Defendant for an amount equal to Plaintiffs' and other collective members' unpaid overtime wages;

  c.   An equal amount to the overtime wage damages as liquidated damages under the FLSA;

  d.   All costs and attorney's fees incurred prosecuting this action; and

e.   Such further relief as the Court deems just and equitable.

Dated: March 14, 2024                    Respectfully Submitted,

Josef F. Buenker (*pro hac vice* admission anticipated)
THE BUENKER LAW FIRM
P.O. Box 10099
Houston, Texas 77206
(713) 868-3388
jbuenker@buenkerlaw.com


_____
Peter Winebrake
Michelle Tolodziecki
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491
pwinebrake@winebrakelaw.com
mtolodziecki@winebrakelaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marcus Adams and Conrad Everett, on behalf of themselves and those similarly situated,<br>Plaintiffs,<br>v.<br><br>Rhombus Services, LLC (d/b/a Brandpoint Services),<br>Defendants. | : : : : : : : : : : : : : | CIVIL ACTION<br><br>FIELD ELECTRONICALLY ON MARCH __, 2024<br><br>COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED |

**CONSENT TO BECOME PARTY PLAINTIFF**

I hereby consent, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to become a party plaintiff in the accompanying FLSA action. I understand that I will be bound by the judgment of the Court on all issues in this case.

*Marcus Adams*
_____
Signature

Marcus adams
_____
Printed Name

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marcus Adams and Conrad Everett, on behalf of themselves and those similarly situated,<br>Plaintiffs,<br>v.<br><br>Rhombus Services, LLC (d/b/a Brandpoint Services),<br>Defendants. | : : : : : : : : : : : : : | CIVIL ACTION<br><br>FIELD ELECTRONICALLY ON MARCH __, 2024<br><br>COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED |

**CONSENT TO BECOME PARTY PLAINTIFF**

I hereby consent, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to become a party plaintiff in the accompanying FLSA action. I understand that I will be bound by the judgment of the Court on all issues in this case.

_____
Signature

Conrad Everett
_____
Printed Name